IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Carlotta Motsinger, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 4:11-cv-01734-JMC |
| v. ) | |
| ) | **OPINION AND ORDER** |
| Nationwide Mutual Insurance Company, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This matter is before the court on Plaintiff Carlotta Motsinger's ("Motsinger") Motion to Dismiss Counterclaim of Defendant Nationwide Mutual Insurance Company ("Nationwide") [Dkt. No. 59] seeking a declaratory judgment regarding Motsinger's status as a Class I insured under her Nationwide insurance policies based on her allegation of a common law marital relationship. In support of her motion, Motsinger asserts that the court lacks jurisdiction to issue this declaratory judgment and, alternatively, that Nationwide lacks standing to seek this declaratory judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit arises from a motor vehicle accident on November 10, 2008, involving a collision between a vehicle driven by William Workman ("Workman") in which Motsinger was a passenger and another vehicle driven by Mary Alice Johnson, the driver allegedly responsible for the collision. Motsinger maintained two separate Nationwide automobile insurance policies with underinsured motorist ("UIM") coverage. Both policies were allegedly in effect at the time of the accident. One policy insured one vehicle, and a second policy insured three vehicles.

1

Motsinger sought coverage as a Class I insured[1], claiming that she and Workman were common law husband and wife at the time of the accident.[2] By claiming Class I insured status, Motsinger could "stack"[3] all UIM coverage available under Motsinger's two Nationwide automobile insurance policies.

Nationwide brought a declaratory judgment action [Dkt. No. 20-1] in the Court of Common Pleas for Horry County seeking a determination as to the validity of Plaintiff's alleged common law marriage to Workman. Motsinger and Workman subsequently filed an Answer and Counterclaim [Dkt. No. 20-2] contending that the state circuit court lacked subject matter jurisdiction to determine the validity of a common law marriage.[4] [Dkt. No. 20-1]. Additionally, Motsinger and Workman counterclaimed, alleging that Nationwide engaged in bad faith practices in delaying and denying their claims. [Dkt. No. 20-1]. The parties agreed to a Stipulation of Dismissal without prejudice of their respective claims and counterclaims in the Court of Common Pleas for Horry County. [Dkt. No. 52-2].

---

[1] Under South Carolina law, a Class I insured includes the named insured, the insured's spouse, and the insured's relatives residing in his household. *See Concrete Services, Inc. v. U.S. Fidelity & Guar. Co.*, 331 S.C. 506, 498 S.E.2d 865 (1998).

[2] South Carolina recognizes common law marriage by statute. *See* S.C. Code Ann. 20-1-360 (1985) ("Nothing contained in this article shall render illegal any marriage contracted without the issuance of a license").

[3] "Stacking refers to an insured's recovery of damages under more than one insurance policy in succession until all of his damages are satisfied or until the total limits of all policies have been exhausted." *Nakatsu v. Encompass Indem. Co.*, 390 S.C. 172, 178, 700 S.E.2d 283, 286 (Ct. App. 2010) (quoting *State Farm Mut. Auto. Ins. Co. v. Moorer,* 330 S.C. 46, 60, 496 S.E.2d 875, 883 (Ct. App. 1998)).

[4] Motsinger relied on *Thomas v. McGriff*, 368 S.C. 485, 488, 629 S.E.2d 359, 360 (2006) for the proposition that "[t]he family court has exclusive subject-matter jurisdiction to determine an action for a declaration that a common-law marriage exists or existed" to support her allegation of lack of subject matter jurisdiction.

Nationwide then filed its declaratory judgment action in family court. [Dkt. No. 20-3]. Subsequently, Motsinger brought her own action against Workman in family court asking for a determination that she and Workman had a common law marriage at the time of the accident. [Dkt. No. 20-4]. Upon stipulation by Motsinger and Workman, the family court issued an order finding that the two were married at the time of the accident. [Dkt. No. 20-5]. Nationwide sought to intervene in the matter, citing its own pending action before the family court. As a result of those efforts, Motsinger alleges the family court judge vacated his prior order, finding that the court lacked subject matter jurisdiction to hear the case on the grounds that there was never a justiciable or actual controversy between Motsinger and Workman. [Dkt. No. 21-8]. In his order vacating his prior decision, the judge also denied Nationwide's Motion to Intervene. As a result, no state court has yet ruled on the issue of whether Motsinger and Workman had a valid common law marriage at the time of the accident.

Motsinger then filed the present action [Dkt. No. 1] in the Court of Common Pleas in Horry County alleging that Nationwide acted in bad faith in failing to resolve Motsinger's claim, breached its contractual obligations of good faith and fair dealing, and engaged in litigation regarding the common law marriage issue that amounted to an abuse of process. *See* Second Amended Complaint. [Dkt. No. 56]. Nationwide removed the case to this court [Dkt. No. 1-2] and filed its Answer and Counterclaim [Dkt. No. 57] seeking a declaratory judgment from this court regarding Motsinger's entitlement to Class I insured status as a result of her alleged common law marriage.

Motsinger filed the instant Motion to Dismiss [Dkt. No. 59] Nationwide's counterclaim arguing that the court lacks subject matter jurisdiction to hear the counterclaim and that Nationwide does not have standing to seek a declaratory judgment in this matter. Nationwide

3

filed its Response in Opposition [Dkt. No. 67] to Motsinger's motion.

## DISCUSSION

**A. The Domestic Relations Exception to Diversity Jurisdiction.**

Motsinger argues that the longstanding domestic relations exception to diversity jurisdiction divests this court of the jurisdiction to adjudicate Nationwide's declaratory judgment action because the issue presented involves a determination of Motsinger's marital status at the time of the accident.

This matter is before the court as an issue of federal diversity jurisdiction pursuant to 28 U.S.C. § 1332. Federal courts have long recognized an exception to diversity jurisdiction where domestic relations are at issue. *See Ankenbrandt v. Richards*, 504 U.S. 689 (1992) (detailing the history and evolution of the domestic relations exception). Though courts have liberally applied the domestic relations exception in the past, the Supreme Court has stated that the exception should be applied narrowly to "divest the federal courts of the power to issue divorce, alimony, and child custody decrees." *Id.* at 703 – 705; *see also Marshall v. Marshall*, 547 U.S. 293, 299 (2006) (in which the Court acknowledges that the *Ankenbrandt* decision "reined in the 'domestic relations exception'"). The policy justifications underlying the exception are rooted in matters of judicial economy and judicial expertise, on the ground that state courts are more suited to adjudicate domestic issues, which typically arise out of state law, and deferring to state courts' "special proficiency . . . over the past century and a half in handling issues that arise in the granting of [divorce, alimony and child custody] decrees." *Id.* at 704. The court further recognized "that in certain circumstances, the abstention principles developed in *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody."

*Ankenbrandt, 504* U.S. at 705.[5]    Such a case might arise "if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties." *Id.*  Even still, if the case does "not require the court either to adjust family status or to establish duties under family-relations law or to determine whether or not such duties had been breached" then the domestic relations exception likely does not limit a federal court's jurisdiction.  *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980); *see also Raftery v. Scott*, 756 F.2d 335, 338 (4th Cir. 1985); *Wasserman v. Wasserman*, 671 F.2d 832, 834-35 (4th Cir. 1982).

The declaratory judgment action in this case does not require the court to rule on a divorce, alimony or child custody decree.  Furthermore, ruling on whether Motsinger and Workman had a valid common law marriage at the time of the accident would not involve an adjustment to family status, since it has never been determined whether Motsinger and Workman are, in fact, spouses.  Finally, Nationwide is not asking the court to make a legal finding that

---

[5] Neither party briefed the court on the potential applicability of the *Burford* abstention doctrine. Nonetheless, the *Burford* abstention doctrine, which is to be applied sparingly, is not applicable in this case.  A determination as to the validity of Motsinger's common law marriage would not present sufficiently "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," nor would adjudication in a federal forum be "disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Johnson v. Collins Entm't Co., Inc.*, 199 F.3d 710, 719 (4th Cir. 1999) (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 361 (1989)).  In determining whether a common law marriage exists, a court must look merely for facts and circumstances demonstrating the parties' intent to be married.  *See Callen v. Callen*, 365 S.C. 618, 624, 620 S.E.2d 59, 62 (2005). A simple facts-and-circumstances test does not constitute a difficult question of state law.  Additionally, a federal court asked to determine the validity of a common law marriage would rule according to South Carolina law based on the same facts and circumstances manifesting intent that would be presented in state court. Therefore, adjudication of this issue in a federal forum would not be disruptive of a coherent state policy.

would dissolve an otherwise valid marriage since, again, no court has conclusively determined as a matter of law that a valid marriage exists. *See e.g. Coleman v. Monson*, CA 5:10-0535-MBS, 2010 WL 4038606 (D.S.C. Oct. 14, 2010) (domestic relations exception to the diversity statute precluded the court from addressing the plaintiff's action seeking an annulment, a divorce and $1 billion in damages).

For these reasons, the domestic relations exception does not strip the court of its subject matter jurisdiction to hear Nationwide's declaratory judgment action on the issue of whether Motsinger is a Class I issued under the Nationwide policies at issue simply because the court may need to make some determination of Motsinger's marital status at the time of the accident.

### B.  Nationwide's Standing under the Declaratory Judgment Act.

Motsinger also argues that Nationwide lacks standing to seek a declaratory judgment because it does not have the requisite interest in her marital status. She further argues, that even if Nationwide does have a legal interest in her marital status, Nationwide's interest is so peripheral as to warrant dismissal of the counterclaim. However, Motsinger's arguments are misguided. Although this case may involve some issues related to Motsinger's marital status at the time of the accident, Nationwide's counterclaim for a declaratory judgment concerns its coverage obligations under its insurance policies.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides that "in a case of actual controversy . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201. As a preliminary matter, the issue of whether a party has standing to maintain an action in federal court is a

question of federal, not state law.[6] *Phillips Petrol. Co. v. Shutts,* 472 U.S. 797, 804, (1985) (holding "[s]tanding to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court."); *White v. National Union Fire Ins. Co.,* 913 F.2d 165, 167 (4th Cir. 1990) (holding "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction."). Additionally, a party's "standing to maintain a declaratory judgment action is a question of federal law, even where, as here, a district court in diversity is called on to adjudicate a state-created right." *Lott v. Scottsdale Ins. Co.,* 811 F. Supp. 2d 1224, n. 8 (E.D. Va. 2011); *Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 636-37 (4th Cir. 2005) ("Whether Miller has standing to maintain this declaratory judgment action is a question that must be resolved under well-established principles of federal law.").

A declaratory judgment may be issued only if the case-or-controversy requirements under Article III of the United States Constitution are satisfied. *Miller*, at 637. Article III, Section 2 of the United States Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. amend. III § 2. "This limitation is implemented, in part, by the judicially created standing-to-sue doctrine." *Lott,* at 1228-29 (E.D. Va. 2011). To demonstrate constitutional

---

[6] Motsinger relies on the South Carolina Supreme Court's decision in *Ex Parte Gov't. Employee's Ins. Co. ("GEICO")*, 373 S.C. 132, 644 S.E.2d 699 (2007), which involves a claim for Class I coverage on the basis of the insured Plaintiff's common law marriage. In that case, the Supreme Court upheld the family court's decision denying GEICO's request to join and/or intervene in Plaintiff's action in family court seeking a ruling on the legitimacy of his common law marriage. *Id.* at 135, 644 S.E.2d at 700. The Supreme Court agreed that GEICO failed to show that it had a real interest, rather than merely a tangential interest in the outcome of the family court action sufficient to allow joinder under Rule 19 of the South Carolina Rules of Civil Procedure and that GIECO did not have "an interest relating to the property or transaction which is the subject of the action" sufficient to allow it to intervene pursuant to Rule 24(a)(2) of the South Carolina Rules of Civil Procedure. *Id.* at 136, 139, 644 S.E.2d 699, 701-02. Because the case at bar involves a claim under the federal Declaratory Judgment Act, rather than an action to join or intervene under procedural rules, the analysis from *GEICO* is not applicable.

standing, a plaintiff must show that she suffered or faces an actual or imminent "(1) injury in fact (2) that is fairly traceable to the defendant's conduct and (3) that is likely to be redressed by a favorable decision." *Retail Indus. Leaders Assoc. v. Fielder,* 475 F.3d 180, 186 n. 1 (4th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). When seeking a ruling under the Declaratory Judgment Act, plaintiff must also demonstrate standing pursuant to the statute. In such situations, the question becomes "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Miller,* at 637 (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

Nationwide meets its constitutional standing requirements. First, Nationwide has a legally protected interest in knowing its coverage obligations. Furthermore, Nationwide has an interest in paying only those claims that are legitimate. Nationwide would be injured if it were required to pay Motsinger based on her unvalidated claims of Class I insured status under the Nationwide policies resulting from an alleged common law marriage. Additionally, Nationwide's coverage obligations are not peripheral, as Motsinger argues, but are directly dependent on a determination of Motsinger's marital status. Finally, if the court determines that Motsinger did not have a common law marriage at the time of the accident, Nationwide will not only know its coverage obligation, but it will avoid the injury of having to pay stacked coverage claimed by an alleged Class I insured.

Nationwide also meets the statutory standing requirements under the Declaratory Judgment Act. First, there is a substantial controversy presented in this action. Nationwide challenges Motsinger's claim to Class I insured status based on her assertion that she was Workman's common law spouse at the time of the accident. The validity of Motsinger's

common law marriage must, by its very nature, be verified by a court. No such determination has yet been made. Therefore, the validity of Motsinger's claims to Class I insured status remains in dispute. Second, there is no question that Nationwide and Motsinger have adverse interests. A finding that Motsinger had a common law marriage at the time of the accident could give her Class I insured status such that she could be entitled to stack her UIM coverage. Conversely, a finding that Motsinger did not have a valid common law marriage at the time of the accident would preclude such coverage. Finally, Nationwide's counterclaim seeking a determination of its obligations under Motsinger's insurance contract is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Nationwide is entitled to know its contractual obligations regardless of the outcome of Motsinger's bad faith action. As a result, Nationwide is within its rights to bring this action as a valid counterclaim in order to determine those rights.

For the reasons stated above, Nationwide has standing to bring this declaratory judgment action. Accordingly, Motsinger's Motion to Dismiss Nationwide's Counterclaim [Dkt. No. 59] is **DENIED**.

**IT IS SO ORDERED**

*J. Michelle Childs*

United States District Judge

January 30, 2013
Florence, South Carolina

9